**Kenny TIMMONS, Plaintiff,**

v.

**SPECIAL INSURANCE SERVICES, American Fidelity Assurance Company, American Medical Security, Robert J. Hall, Ken Cornett, and United Wisconsin Life Insurance Company, Defendants.**

**No. 1:96–CV–476.**

United States District Court,
E.D. Texas,
Beaumont Division.

Nov. 13, 1997.

---

Michael Jacobellis, Tonahill, Hile, Leister & Jacobellis, Beaumont, TX, for Kenny Timmons.

John Griggs Sams, Dan Kent Horn, Maloney, Bean & Horn, Irving, TX, for Special Ins. Services Inc., Amer. Fidelity Assur. Co.

Thomas W. Duesler, Adams, Coffey & Duesler, Beaumont, TX, for Amer. Medical Security, United Wisc. Life Ins. Co.

Benjamin Thomas McElroy, Johnson & McElroy, Dallas, TX, for Robert J. Hall.

Christopher A. Colvert, Houston, TX, for Ken Cornett.

*MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS AMERICAN MEDICAL SECURITY'S AND UNITED WISCONSIN LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, DISMISSING PLAINTIFF'S STATE LAW CLAIMS AGAINST DEFENDANT ROBERT HALL, AND DENYING DEFENDANT ROBERT HALL'S MOTION FOR SUMMARY JUDGMENT*

SCHELL, Chief Judge.

This matter is before the court on Defendants American Medical Security's and United Wisconsin Life Insurance Company's Motion for Summary Judgment filed on October 14, 1997, and Defendant Robert Hall's Motion for Summary Judgment, also filed on October 14, 1997. Plaintiff filed replies to Defendants' motions on October 31, 1997. Upon consideration of the motions, replies, and applicable law, the court is of the opinion that Defendants American Medical Security's and United Wisconsin Life Insurance Company's motion should be GRANTED IN PART and DENIED IN PART, Hall's Motion for Summary Judgment should be DENIED, and Plaintiff's state law claims against Hall should be DISMISSED, *sua sponte*, for failure to state a claim.

### I. BACKGROUND

Plaintiff Kenny Timmons ("Timmons") was an employee of Sibon Beverage Corporation ("Sibon"). Dfs. AMS's & UWLIC's Mot. for Summ J. at 2. Sibon was owned by Defendant Robert Hall ("Hall"). Sibon established an "Employee Benefit Plan" (hereinafter the "Plan"), to provide certain health care benefits for participating employees and their eligible dependents. *Id.*, Ex. B. The Plan was self-funded by Sibon, the employer and Plan sponsor. *Id.* Sibon contracted with American Medical Security, Inc. ("AMS") for AMS to act as Plan Administrator. *Id.*, Ex. A. ("Plan Services Agreement"). AMS was authorized, *inter alia*, "to do all it deem[ed] necessary or convenient to carry out the terms and purposes of the P[lan]." *Id.*, Ex. A.

Sibor also purchased an "Excess Loss Insurance Policy" (hereinafter the "Excess Loss Policy") from United Wisconsin Life Insurance Company ("UWLIC"). Under the Excess Loss Policy, UWLIC agreed to reimburse Sibon for "eligible medical claims under the Plan in excess of certain specific and aggregate amounts." *Id.* at 3. The Excess Loss Policy was the Plan's sole asset.

According to its express terms, the Excess Loss Policy was a contractual agreement between Sibon and UWLIC, and did not cover any Sibon employees or Plan participants. *Id.*, Ex. C, page 7. The Excess Loss Policy was to be in effect from February 1, 1995,

until January 31, 1996. *Id.,* Ex. C, page 2. UWLIC was not obligated to reimburse, the Plan for any expenses incurred by a Plan participant unless the expense was incurred during the "incurred period" and paid during the "paid period," as described under the Excess Loss Policy. *Id.,* Ex C, page 2. Coverage under the Excess Loss Policy would terminate upon termination of the Plan, cancellation of the Plan Services Agreement between Sibon and AMS, or upon any date that Sibon failed to pay claims or make funds available to pay claims under the Plan. *Id.,* Ex. C, page 8.

Timmons was injured on Sibon's premises on May 25, 1995.[1] Pl.'s Third Amd. Cmplt. at 3. Special Insurance Services ("SIS") paid Timmons' claim for benefits as a result of the May 25, 1995, incident and is no longer a party to this suit.[2] Although Timmons did not return to work while recovering from these injuries, Timmons claims that Sibon continued to pay him as its employee, paid his insurance premiums, and informed him that his insurance coverage would continue until November 30, 1995. Pl.'s Reply to AMS's and UWLIC's Mot. for Summ. J., Ex. 11, page 88 (Dep. of Kenny Timmons), & Ex. 6 (Letter to Kenny Timmons). On November 7, 1995, Timmons allegedly fell down the steps of his home and incurred various injuries necessitating medical care. Pl.'s Third Amd. Cmplt. at 2.

According to Timmons, AMS informed Sibon that it should cancel the Plan Services Agreement because a reduction in Sibon's work force caused Sibon to fall below the participation requirements of the Excess Loss Policy. Pl.'s Reply to Hall's Mot. for

Summ. J. at 2. Sibon then allegedly canceled the Excess Loss Policy, effective November 30, 1995. Dfs. AMS's & UWLIC's Mot. for Summ. J. at 4.[3] Sometime after November 30, 1995, Timmons' health care providers submitted Timmons' medical bills to AMS for payment of Timmons' claims relating to his November 7, 1995, fall. AMS denied payment of these claims. Pl's 's Reply to Hall's Mot. for Summ. J. at 2. As a result of the denial of his claims, Timmons filed the present lawsuit in state court. Subsequently, defendants and AFAC removed this suit to federal court, asserting federal question jurisdiction. Timmons asserts various theories of recovery against the defendants under Texas law and, in the alternative, under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* (hereinafter "ERISA"). *See* Pl.'s Third Amd. Cmplt. Defendants now move for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The sub-

---

1. As a result of the May 25, 1995, incident, Timmons obtained a judgment against Hall in Texas state court. The details of this judgment are discussed below. *See* Section III.C, *infra,* at 1007–08.

2. Timmons has settled all claims against SIS and American Fidelity Assurance Company ("AFAC"). *See* Order Granting Timmons' and Defendants' Joint Motion to Dismiss With Prejudice (dismissing Timmons' claims against SIS and AFAC). Timmons' claims resulting from the May 25, 1995, incident are, therefore, not at issue in this suit. Further, according to Timmons' Reply to Hall's Motion for Summary Judgment, Timmons has also resolved his claims

against Ken Cornett, Sibon's former president. Pl.'s Reply to Hall's Mot. for Summ. J. at 3. Accordingly, only Timmons' claims against AMS, UWLIC, and Hall remain.

3. The parties are in disagreement as to whether Sibon canceled the Excess Loss Policy, the Plan, or both. Defendants claim that Sibon canceled the Plan and the Excess Loss Policy. *Id.* at 4. Timmons claims that Sibon canceled only the Excess Loss Policy and the contractual agreement with AMS. Pl.'s Reply to AMS's and UWLIC's Mot. for Summ. J. at 2. Thus, Timmons contends that the Plan has never been terminated. *Id.* at 3.

stantive law identifies which facts are material. *Id.*

The party moving for summary judgment has the burden to show there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See id.* at 247, 106 S.Ct. at 2509–10. Where the movant bears the burden of proof on an issue, he must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54. In this instance, the movant is not required to offer evidence to negate the nonmovant's claims. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 885–86, 110 S.Ct. 3177, 3187–88, 111 L.Ed.2d 695 (1990). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial," FED. R.CIV.P. 56(e), and adduce affirmative evidence. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15.

Summary judgment evidence is subject to the same rules that govern the admissibility of evidence at trial. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 175–76 (5th Cir.1990), *cert. denied,* 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993). In considering a motion for summary judgment, the court cannot make credibility determinations, weigh evidence, or draw inferences for the movant. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The evidence of the nonmovant, however, is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor. *Id.*

### III. ANALYSIS

#### A. PREEMPTION

##### 1. *Timmons' State Law Claims Against AMS and UWLIC*

■ As a threshold matter, AMS and UWLIC argue that Timmons' state law claims are preempted by ERISA. The determination of whether ERISA preempts a state law claim requires a two-part inquiry.

First, the fact-finder must determine whether the benefit plan at issue constitutes an ERISA plan. Secondly, if the plan is an ERISA plan, the fact-finder must then determine whether the state law claims relate to the plan. If the state law claims relate to an ERISA plan, such claims are preempted by ERISA.

■ The existence of an ERISA plan is a question of fact. *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 235 (5th Cir.1995), *cert. denied,* 516 U.S. 1174, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996). "ERISA applies to any employee benefit plan if it is established or maintained by an employer or an employee organization engaged in commerce or in any industry or activity affecting commerce." *Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240 (5th Cir.1990). An employee benefit plan is defined under ERISA as

> any plan, fund, or program which was ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... medical, surgical, or hospital care or benefits. ...

29 U.S.C. § 1002(1). Such an ERISA plan exists "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits," *Memorial Hosp. System,* 904 F.2d at 240 (quoting *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982)), and the plan does not fall under ERISA's safe-harbor provisions. *McDonald,* 60 F.3d at 236. Further, if the employer contributes to the benefits plan, the safe-harbor provisions do not apply. *Id.* at 236 & n. 7 (citing 29 C.F.R. § 2510.3–1(j)).

■ In the present case, a reasonable fact finder could only conclude that Sibon's plan constituted an ERISA plan. First, it is undisputed that the Plan was funded by Sibon, Timmons' employer. Dfs. AMS's & UWLIC's Mot. for Summ. J. at 3, Ex. B. Thus, the Plan does not fall under ERISA's safe-har-

bor provisions. Secondly, a reasonable fact-finder could only ascertain that the Plan defined (1) those persons potentially covered as beneficiaries under the Plan, (2) the Plan's intended benefits, (3) procedures for receiving such benefits, and (4) the Plan's source of financing. Indeed, participating employees and their eligible dependents are described as covered beneficiaries in the Plan booklet; the benefits provided by the Sibon plan were described at length in the Plan booklet; the procedures for receiving such benefits, including the procedure for appealing a decision made on a claim, were also described in the Plan booklet; and the Plan booklet notified participants that the Plan was self-funded. *Id.* Further, the language of the Plan itself contemplates that it is governed by the provisions of ERISA. *Id.* Therefore, the Plan falls under the purview of ERISA.

■ Having decided that the Plan is an ERISA plan, the court must next determine whether Timmons' state law claims are preempted. ERISA contains a preemption clause which states, in pertinent part: "[T]he provisions of this title ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C.S. § 1003(a) ] and not exempt under section 4(b) [29 U.S.C.S. § 1003(b) ]." 29 U.S.C. § 1144. "The Supreme Court has adopted a broad construction of' [§ 1144], holding that 'ERISA's civil enforcement remedies were intended to be exclusive' in order to prevent the remedies available to ERISA beneficiaries from being 'supplemented or supplanted by varying state laws.'" *Hogan v. Kraft Foods,* 969 F.2d 142, 144 (5th Cir. 1992) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 55–56, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987)) Under this broad construction, "a state law relates to a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380,

2389, 85 L.Ed.2d 728 (1985) (internal quotations omitted).

The Fifth Circuit has found a wide variety of law claims to be related to ERISA plans and, thus, preempted by ERISA. For example, in *Kraft Foods,* the Fifth Circuit held that ERISA preempted the plaintiffs' state law claims for breach of the duty of good faith and fair dealing, negligence, intentional infliction of emotional distress, breach of contract, violations of article 21.21 of the Texas Insurance Code ("article 21.21"), and violations of section 17.50 of the Texas Deceptive Trade Practices Act ("DTPA"). *Kraft Foods,* 969 F.2d at 144–45 (holding that none of the plaintiffs' "claims [were] protected under ERISA's savings clause") (internal quotations omitted). Further, in *Ramirez v. Inter-Continental Hotels,* 890 F.2d 760, 763–64 (5th Cir.1989), the court held that the plaintiff's stale law claims under article 21.21 were preempted by ERISA and that article 21.21 does not fall under the ERISA savings clause. The Texas Supreme Court has also held that ERISA preempts DTPA and article 21.21 claims, when such claims relate to an ERISA plan. *Cathey v. Metropolitan Life Ins. Co.,* 805 S.W.2d 387, 390 (Tex.), *cert. denied,* 501 U.S. 1232, 111 S.Ct. 2855, 115 L.Ed.2d 1023 (1991).

Just as the plaintiffs' state law claims were preempted by ERISA in the above cases, Timmons' state law claims in the present case are also preempted by ERISA. Timmons has asserted state law claims against Defendants for breach of contract, breach of the duty of good faith and fair dealing, violations of article 21.21, and violations of the DTPA. Pl.'s Third Amd. Cmplt. at 3–6. These claims are predicated upon conduct allegedly related to the denial of Timmons' claims under Sibon's Plan. *Id.* Thus, each of Timmons' state law claims against AMS and UWLIC are connected or related to the Plan and are, therefore, preempted by ERISA.[4] Accordingly, summary judgment in favor of AMC and UWLIC on Timmons' state law claims is hereby GRANTED.

---

4. It appears as though Timmons has either conceded that his state based claims are preempted by ERISA or abandoned such claims altogether. Timmons makes no mention of his state law claims in either his proposed findings of fact and conclusions of law or his reply to Defendants' motion for summary judgment. Pl.'s Findings of Fact and Conclusions of Law; Pl.'s Reply to AMS's and UWLIC's Mot. for Summ. J.

### 2. Timmons' State Law Claims Against Hall

■ Timmons has asserted the same state law claims against Hall that he asserted against AMC and UWLIC. Thus, Timmons' state law claims against Hall also relate to an ERISA plan and are subject to federal preemption; however, Hall did not move for summary judgment on this basis. Therefore, the court may only grant summary judgment in favor of Hall on the basis of federal preemption of Timmons' state law claims, by entering judgment *sua sponte. See Powell v. United States,* 849 F.2d 1576, 1578 n. 6 (5th Cir.1988) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). Because Timmons has not been afforded the notice required by Federal Rule of Civil Procedure 56(c), however, this court does not have the authority to enter judgment against Hall on this basis. *See id.* at 1579–80.

■ Nevertheless, "[a] district court may dismiss a complaint on its own motion for failure to state a claim." *Small Engine Shop, Inc. v. Cascio,* 878 F.2d 883, 887 (5th Cir.1989) (quoting *Shawnee International N.V. v. Hondo Drilling Co.,* 742 F.2d 234, 236 (5th Cir.1984)); *see also Ramirez v. Inter–Continental Hotels,* 890 F.2d 760, 764 (5th Cir.1989) (affirming district court's *sua sponte* dismissal of the plaintiff's state law claims because such claims were preempted by ERISA)). Under Rule 12(b)(6), dismissal is proper only if there is either (1) "the lack of a cognizable legal theory" or (2)" the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Further, the court cannot consider material outside the plaintiff's complaint. *See Powe v. Chicago,* 664 F.2d 639, 642 (7th Cir.1981).

■ In the present case, Timmons' pleadings fail to state a cognizable legal theory of recovery under Texas law because even if all such allegations are taken as true, it is clear that federal law preempts each of Timmons' state law claims. *See* Section III.A.1, *supra.* Timmons can prove no set of facts which would entitle him to relief on his state law claims against Hall. Accordingly, Timmons' state law claims against Hall are DISMISSED WITH PREJUDICE, for failure to state a claim upon which relief can be granted.

### B. TIMMONS' ERISA CLAIMS AGAINST AMS AND UWLIC

AMS and UWLIC argue that they are entitled to judgment as a matter of law on Timmons' ERISA claims for the following reasons:

(1) UWLIC did not have a duty to pay Timmons' medical bills under the express terms of the Excess Loss Policy because these bills were not incurred and paid prior to Sibon's termination of the Plan;

(2) AMS had no duty to fund the plan or insure against liability under the Plan, because AMS was not the Plan's sponsor,

(3) Neither AMS nor UWLIC can be held liable for any alleged oral amendments to the Plan because oral amendments to an ERISA plan are barred as a matter of law; and

(4) Neither AMS nor UWLIC are liable for breach of fiduciary duties for failing to inform Sibon that the Plan was underfunded.

*See* AMS' & UWLIC's Mot. for Summ. J. In his response to Defendants' motion for summary judgment, however, Timmons argues that AMS and UWLIC "misunderstand plaintiff's claims against them." Pl.'s Reply to AMS's and UWLIC's Mot. for Summ J. at 4. Timmons concedes that UWLIC does not owe him any benefits under the Excess Loss Policy. Timmons also concedes that he is asserting no claims based upon any oral amendments to the Plan or misrepresentations regarding amendments to the Plan. Further, Timmons concedes that he is not asserting a claim based upon either AMS's or UWLIC's failure to notify Sibon, the Plan sponsor, that the Plan was underfunded. Instead, Timmons has limited himself to only

one theory of relief against these defendants: breach of fiduciary duties. Therefore, the court need only address whether AMS and UWLIC are entitled to judgment as a matter of law because they are not liable for breach of fiduciary duties.[5]

### 1. Fiduciary Status

■■■■■ "ERISA imposes personal liability on [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties, imposed upon [ERISA] fiduciaries." *Reich v. Lancaster*, 55 F.3d 1034, 1045 (5th Cir.1995) (internal quotations omitted). A fiduciary is defined under ERISA as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). A person "means an individual, partnership, joint venture, corporation ... unincorporated organization, association, or employee organization." *Id.* § 1002(9). The term "fiduciary" is to be broadly construed. *Donovan v. Mercer* 747 F.2d 304, 308 (5th Cir.1984). This definition "includes anyone who exercises discretionary authority over the plan's management, anyone who exercises authority over the management of its assets, and anyone having discretionary authority or responsibility in the plan's administration." *Lancaster*, 55 F.3d at 1046 (internal quotations omitted) Thus, "a person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control." *Sommers Drug Stores v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1459-60 (5th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987).

■■■ In the present case, it cannot be disputed that AMS was a fiduciary as that term is defined under ERISA. AMS was the administrator of the Plan. Dfs. AMS's & UWLIC's Mot. for Summ. J. at 3, Ex. A ("Plan Services Agreement"). Under the Plan Services Agreement, AMS was authorized "to do all things it deem[ed] necessary or convenient to carry out the terms and purposes of the PLAN" *Id.* Such plan administrators are generally deemed fiduciaries under ERISA. *See, e.g., McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir.1995), *cert. denied*, 516 U.S. 1174, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996). Therefore, AMS was a fiduciary of the Sibon Plan.

■■■■ Whether UWLIC was a fiduciary, however, is a different question. Typically, insurance companies are not considered ERISA fiduciaries. Insurers, even those having the status of a benefit plan insurer, are not "ERISA fiduciaries unless they are given the discretion to manage plan assets or to determine claims made against the plan." *Kyle Railways v. Pacific Admin. Serv.*, 990 F.2d 513, 517 & n. 3 (9th Cir.1993) (citing *American Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y*, 841 F.2d 658, 664-65 (5th Cir.1988)). An insurer cannot be considered an ERISA fiduciary if its authority is limited to mere ministerial duties. *Id.* at 518. Thus, whether an insurer is an ERISA fiduciary depends largely upon which hat the insurer wears—that of a party with some discretion over management of the Plan or that of a party with purely ministerial duties.

■■■ In the present case, it is not clear based upon the summary judgment evidence what, if any, authority UWLIC had over the administration or management of the Plan's assets. UWLIC was neither the sponsor nor administrator of the Plan. Instead, UWLIC was the insurer which issued Sibon's Excess

---

5. As previously discussed, *see* note 3, *supra*, AMS and UWLIC argue that Sibon terminated both the Plan and Excess Loss Policy effective November 30, 1995. Timmons' claims against AMS and UWLIC, however, relate not to whether the Plan or Excess Policy were in effect as of that date, but only to whether AMS and UWLIC breached their fiduciary duties in managing and operating the Plan, thereby causing Sibon to leave the Plan unfunded. Thus, the issue of if, and when, the Plan terminated is not material to the court's determination of whether AMS and UWLIC are entitled to judgment on Timmons' ERISA claims.

Loss Insurance Policy. Dfs. AMS's, UWLIC's Mot. for Summ. J., Ex. C. Under the Excess Loss Policy's express language, the policy was "solely between UWLIC and [Sibon], and [did not] create any rights or legal relationship between UWLIC and any Covered Person or agent, assignee or beneficiary thereof UWLIC's sole liability [was] to [Sibon]." *Id.* Ex. C, page 7. Timmons has produced evidence, however, that the decision whether to pay benefits under the Plan (as opposed to the Excess Loss Policy) was "at all limes made by American Medical Securities and United Wisconsin." Pl.'s Reply to AMS's and UWLIC's Mot. for Summ. J., Ex. 7, page 3 (Brief of Defendant Robert J. Hall in Support of Motion for Instructed Verdict). Further, Timmons claims that AMS and UWLIC jointly authorized Sibon's insurance agent, Richard Adcock, to work with Sibon regarding the management of the Plan. *Id.* at 7. This evidence is sufficient to create a fact issue as to whether UWLIC had sufficient discretionary power over the management and administration of the Plan to qualify as an ERISA fiduciary.[6]

### 2. Fiduciary Liability

■ Because the court has determined that AMS was an ERISA fiduciary with respect to the Plan, the court must next examine the issue of whether AMS breached any fiduciary duties owed to Plaintiff. ERISA states, in pertinent part:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and their beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . .

29 U.S.C. § 1104(a)(1). Thus, ERISA imposes a duty of care and loyalty upon fiduciaries.

■ In the present case, Timmons contends that AMS breached its fiduciary duties owed to Plan participants by (1) "failing to notify Sibon, the plan sponsor, that the plan would not automatically terminate after eleven employees were laid off," (2) failing to notify Plan participants that Sibon canceled AMS' contract to act as Plan administrator, (3) failing to advise Sibon "of the requirements of 29 U.S.C. § 1341 with respect to Single Employer Plan terminations," and (4) by "employing incompetent unskilled, and untrained employees and agents . . . to advise [Sibon] as to the requirements of the plan[.]" Pl.'s Reply to AMS's and UWLIC's Mot. for Summ. J. at 1–2.

On the other hand, AMS does not argue that it is entitled to judgment as a matter of law because it is not an ERISA fiduciary or did not breach any fiduciary duties owed to Timmons. Rather, AMS argues that, irrespective of any fiduciary duties, it cannot be held liable because AMS did not cause Timmons' alleged damages. In support of this argument, AMS argues that the Plan did not become unfunded until Sibon decided to terminate the Excess Loss Policy and, thus, the Plan. AMS's and UWLIC's Mot. for Summ. J. at 6. In the alternative, AMS maintains that even if the Plan was unfunded prior to Sibons' termination of the Excess Loss Policy, it was Sibon's decision to terminate the Policy prior to the time Timmons' medical expenses were incurred and paid that caused Timmons' alleged damages. *Id.* Thus, AMS continues, it is not responsible for Timmons' alleged damages.

The flaw in AMS' argument is that it apparently misconstrues the basis for Timmons' claim that AMS breached its fiduciary duties. Timmons does not argue that it was AMS' duty to fund the Plan. Pl.'s Reply to AMS's and UWLIC's Mot. for Summ. J. at 6. Nor does Timmons contend that AMS is liable for failing to notify Sibon that the Plan was underfunded. *Id.* at 7. Instead, Timmons

---

**6.** Because a fact issue remains as to whether UWLIC was an ERISA fiduciary, a fact issue necessarily remains as to whether UWLIC breached any fiduciary duties or whether such breach caused Timmons' alleged damages Ac- cordingly, the court will address the remainder of these defendants' motion for summary judgment as it relates to AMS. Thus, summary judgment in favor of UWLIC as to Timmons' ERISA claims is hereby DENIED.

argues that it was AMS' breach of fiduciary duties (as listed above) which caused Sibon to cancel the Excess Loss Policy and, thus, leave the Plan unfunded. *Id.*[7]

In support of this argument, Timmons has produced summary judgment evidence that AMS, through its agents or employees, may have misinformed Sibon regarding participation requirements under the Plan, the effects of canceling the Excess Loss Policy, and the overall management of the Plan. *Id.,* Exs. 27–30. Thus, according to Timmons, Sibon acted upon the advice of AMS and canceled the Excess Loss Policy when it did not have to, thereby leaving the Plan unfunded. Because the Plan was unfunded, Timmons continues, his claims were not paid. This evidence, when taken as true, is sufficient to create a fact issue as to (1) whether AMS breached its fiduciary duties and, if so, (2) whether this conduct caused Timmons' alleged damages. Accordingly, AMS' motion for summary judgment as to Timmons' ERISA claims is DENIED.

### C. TIMMONS' ERISA CLAIMS AGAINST HALL

In addition to his ERISA claims against AMS and UWLIC, Timmons has asserted ERISA claims against Hall for (1) benefits due under the Plan and (2) breach of fiduciary duties. For the most part, Timmons claims that Hall is directly liable for the conduct of Sibon and its employees as the alter ego of Sibon.[8] In support of his claim that Hall was Sibon's alter ego, Timmons points to a judgment against Sibon which Timmons obtained in Texas state court, in which the court found that Hall was the alter

ego of Sibon.[9] *See* Pl.'s Reply to Hall's Mot. for Summ. J., Ex. 13, at 1–2 (Final Judgment, *Kenny Timmons v. Robert J Hall and Sibon Beverage, Inc.,* In the District Court of Jasper County, Texas, Cause No. 18,315). Timmons claims that the state court's finding is binding on this court. *See* Pl.'s Findings of Fact and Conclusions of Law at 4. In his motion for summary judgment, however, Hall claims that the state court judgment is currently on appeal and, therefore, is not binding on this court. Accordingly, as a threshold issue, this court must determine whether the state court's finding that Hall was Sibon's alter ego is binding in the current proceeding.

In the Fifth Circuit, collateral estoppel bars relitigation of issues if: (1) the issue at stake is identical to the one involved in the prior litigation, (2) the issue was actually litigated, and (3) the determination of the issue in the prior litigation was a critical and necessary part of the earlier action. *See, e.g., RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1290 (5th Cir.1995) (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 & n. 5, 99 S.Ct. 645, 649 & n. 5, 58 L.Ed.2d 552 (1979)). "Collateral estoppel will apply in a second proceeding that involves separate claims if the claims involve the same issue...." *Id.* at 1291. Further, the suits may involve different subject matter, "as long as the requirements for collateral estoppel are met." *Id.* at 1290.

In the present case, Hall does not contend, nor could he, that the alter ego issue litigated in the state court proceeding is not identical to the alter ego issue at stake in the current proceeding. Neither does Hall

---

**7.** Timmons has explained that his theory of recovery against AMS and UWLIC is limited to their alleged breach of fiduciary duties under ERISA. Pl.'s Reply to AMS' & UWLIC's Mot. for Summ. J. As previously discussed, the alleged bases for this theory of recovery are that these defendants (1) did not notify Sibon that the Plan would not terminate due to participation requirements, (2) did not notify Plan participants that Sibon canceled the Plan Services Agreement, (3) failed to advise Sibon of ERISA's plan termination requirements, and (4) employed unskilled, incompetent, and untrained employees and agents to advise Sibon regarding the Plan. Because Timmons has represented to this court that his suit against AMS and UWLIC is limited to

this theory of recovery, Timmons is judicially estopped from asserting any other grounds for relief against these defendants. *See United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir.1993); *Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir.1988).

**8.** Timmons has also asserted a claim for breach of fiduciary duties against Hall in his individual capacity. *See* Pl.'s Reply to Hall's Mot. for Summ. J. at 12.

**9.** Timmons obtained this state court judgment for damages resulting from Sibon's negligence in causing Timmons' May 25, 1995, injuries.

argue that this issue was not actually litigated or that the determination of this issue in the prior proceeding was not a critical and necessary part of the judgment in the earlier action. Instead, Hall argues only that the state court proceeding is pending on appeal and, therefore, is not binding. Thus argument is without merit.

■ Collateral estoppel bars the relitigation of issues already decided pursuant to a valid final judgment. A judgment is valid, even if pending on appeal. *See, e.g., Canedy v. Boardman,* 16 F.3d 183, 185 (7th Cir.1994). Thus, the pendency of an appeal does not affect the finality of a judgment for purposes of res judicata or collateral estoppel. Accordingly, the state court's judgment declaring Hall the alter ego of Sibon is binding in the present case.

Having determined that Hall was the alter ego of Sibon, the court must next determine whether Hall is entitled to judgment as a matter of law on any of the remaining grounds asserted in his motion for summary judgment. Hall's remaining grounds for summary judgment can best be summarized as follows:

(1) Sibon terminated the Plan, as it was allowed to do under ERISA, before Timmons submitted any claims for benefits. Thus, Sibon had no duty to pay Timmons' claims;

(2) Timmons did not meet the Plan's eligibility requirements at the time of his November 7, 1995, injury. Therefore, Timmons was not entitled to benefits under the Plan;

(3) Timmons did not exhaust all administrative remedies as required under the Plan;

(4) Neither Hall nor Sibon were fiduciaries under ERISA;

(5) Hall cannot be held liable for any alleged oral amendments to the Plan or any oral misrepresentations regarding amendments to the Plan;

(6) Hall cannot be held liable under the Consolidated Ominous Budget Reconciliation Act of 1986 ("COBRA"), because Sibon never met the minimum requirements for establishing a COBRA plan; and

(7) Timmons is barred from recovery under the Plan because the Plan is entitled to reimbursement for any money received by Timmons pursuant to his state court judgment against Hall.

The court will address each argument in turn.

### 1. Did Sibon Terminate The Plan On November 30, 1995?

■ Hall contends that Sibon's employee, Elaine Giddens ("Giddens"), canceled the Plan and Excess Loss Policy on behalf of Sibon on November 30, 1995.[10] Because Timmons did not submit his claims for benefits prior to this time, Hall continues, Sibon had no duty to pay Timmons' claims. On the other hand, Timmons argues that Sibon never canceled the Plan and, therefore, must pay Timmons' claims. In the alternative, Timmons contends that even if the Plan was terminated on November 30, 1995, he is still entitled to benefits under the Plan because his claims are related to injuries suffered prior to the Plan's alleged termination. Pl.'s Reply to Hall's Mot. for Summ. J. at 9.[11]

The parties agree that Sibon canceled the Excess Loss Policy effective November 30, 1995. Pl.'s Reply to AMS' & UWLIC's Mot. for Summ. J., Ex. 9. Their disagreement focuses on the issue of whether Sibon's termination of the Excess Loss Policy also served to cancel the Plan. Under the Plan's express language, the Plan was to "terminate

---

**10.** While the parties refer to the Excess Loss Policy's termination date as November 30, 1995, this policy was technically in effect through the end of the day on November 30, 1995. *See* Pl.'s Reply to Hall's Mot. for Summ.J., Ex. 9 (Letter from Elaine Giddens to AMS stating that Sibon wished to cancel Policy No 1700–019097 (the Excess Loss Policy) effective December 1, 1995).

**11.** Timmons also argues that the Plan is still in effect because Sibon failed to comply with the

plan termination notice requirements imposed by 29 U.S.C. § 1341. Section 1341 applies only to pension plans; it does not apply to welfare benefits plans like the one at issue in this case. *See* 29 U.S.C. §§ 1341, 1301(15), and 1002(35). Thus, Sibon was not required to satisfy § 1341's termination requirements with respect to the Plan.

on the date [Sibon] ... terminate[d] any or all benefits under the Plan...." Hall's Mot. for Summ. J., Ex. B, page 19 ("Employee Benefit Plan"). Thus, regardless of whether Sibon expressly canceled the Plan, the Plan would terminate on its own terms whenever Sibon canceled all benefits under the Plan. *Id.*

Because the Excess Loss Policy was the Plan's sole asset, it would appear that Sibon's termination of that policy also served to terminate all benefits under the Plan—a result which would have also terminated the Plan itself Timmons has produced evidence, however, that Sibon notified Plan participants that their "insurance coverage [would] continue through November 30, 1995.... Insurance coverage [would] continue to be available after November 30, 1995[,] provided 7 employees elect[ed] to continue coverage by paying the full insurance premium...." Pl.'s Reply to Hall's Mot. for Summ. J., Ex. 6 ("Letter from Ken R. Cornett, dated November 7, 1995"). This evidence is sufficient to create a fact issue as to whether Sibon maintained some Plan benefits after November 30, 1995. If that is the case, then the Plan would not have terminated on November 30, 1995, because of Sibon's termination of all benefits under the Plan. Therefore, Hall is not entitled to summary judgment on this basis.

Timmons maintains that even if the Plan was terminated on November 30, 1995, he is nevertheless entitled to benefits because his claims were related to injuries initially suffered on November 7, 1995, a date when the Plan was still in effect.[12] If Timmons complied with the Plan's claims procedures, and was not precluded from receiving benefits under the Plan for some other reason, then he is correct in his assertion that the Plan was obligated to pay his claims related to injuries he suffered during the pendency of the Plan. As will be discussed below, a fact issue exists as to whether Timmons did indeed meet the Plan's eligibility requirements for benefits related to the November 7, 1995, incident. Accordingly, even if a fact issue did not exist as to whether the Plan termi-

nated on November 30, 1995, Hall still would not be entitled to judgment as a matter of law on this basis.

### 2. Did Timmons Meet The Plan's Eligibility Requirements?

Hall next argues that he is entitled to judgment because Timmons did not satisfy the employee eligibility requirements as set forth on page 16 of the Plan. Hall's Mot. for Summ. J. at 5. To qualify for benefits under the Plan, an employee was required to have an "active status as an employee...." Pl.'s Reply to Hall's Mot. for Sum. J., Ex. B, page 16. Under the Plan, an employee was considered to be on active status if he worked 40 hours per week. *Id.*, Ex. B, page 4. If an employee failed to qualify as an eligible employee or an employee in active status, however, the Plan gave Sibon the option to "consider [the employee] still eligible for medical and/or dental coverage. Termination [would] be deferred according to [Sibon's] *guidelines and practices, and without discrimination.*" *Id.*, Ex. B, page 19 (emphasis added).

Timmons concedes that he did not meet the Plan's 40 hour per week eligibility requirement. Timmons has brought forth evidence, however, that Sibon carried him as an active employee through November 30, 1995, and continued to pay him for 40 hours each week. *Id.*, Ex. 11 (Deposition of Kenny Timmons). Further, Timmons has produced evidence that Sibon paid his premiums under the Plan until November 30, 1995. *Id.* Exs. 6–7. When taken as true for the purpose of deciding this motion for summary judgment, this evidence is sufficient to create a fact issue as to whether, according to Sibon's guidelines and practices, Sibon considered Timmons an active employee eligible to receive benefits under the Plan until November 30, 1995. Accordingly, Hall is not entitled to judgment as a matter of law on the basis that Timmons did not satisfy the Plan's eligibility requirements

### 3. Did Timmons Exhaust All Available Administrative Remedies?

Hall next argues that he is entitled to judgment because Timmons did not ex-

12. As previously discussed, Timmons concedes that he is not entitled to benefits under the Ex-

cess Loss Policy because his claims were not filed prior to that policy's termination.

haust all administrative remedies as required under the Plan. The Plan required a "beneficiary to exhaust all available appeals before taking legal action" *Id.*, Ex. 18. The Plan delineates the appeals process in some detail. Upon denial of a claim, the first step in the appeals process was to send AMS a written request for review of the claim within 60 days of the notice of a claim denial. *Id.*, Ex. 18, page 56. Hall contends that Timmons did not send such a request and, therefore, failed to exhaust all available remedies before taking legal action. Timmons does not contend that he followed the appeals procedure; however, Timmons argues that he could not follow such procedures because they were no longer available at the time he received notice of the denial of his claims. *Id.* at 11.

Timmons has the better argument. Indeed, Timmons' medical providers did not submit Timmons' benefits claims until after Sibon had canceled the Plan effective November 30, 1995. AMS returned these claims unpaid, with the notation that AMS was "no longer providing administrative services for this employer. Please contact the provider to update their records and forward a new claim to the correct carrier." *Id.*, Ex. 10. Because AMS refused to provide administrative services under the Plan the AMS appeals procedure was no longer available. Thus, there were no "available appeals" for Timmons to exhaust. To require Timmons to follow the Plan's appeals procedure, when no such procedures were available, would be illogical. Accordingly, Hall is not entitled to judgment on the basis that Timmons failed to exhaust all available administrative remedies under the Plan.

### 4. Were Hall And Sibon Fiduciaries Under The Plan?

█ Hall next argues that he is entitled to judgment with respect to Timmons' breach of fiduciary duty claims, because neither Sibon nor Hall were ERISA fiduciaries.[13] While it is true that an employer does not act as a fiduciary when it has no control or authority over the management and administration of a benefits plan, if the employer

exercises some control over the plan's assets or overall administration, then that employer may be a fiduciary under ERISA. *See* Section III.B. 1, *supra*, at 1005. In the present case, Timmons concedes that AMS was the Plan's administrator. Nevertheless, Timmons has produced evidence, including various AMS records, correspondence between Sibon and AMS, and Hall's deposition, which suggests that Sibon, Hall, and his employees, Ken Cornett and Elaine Giddens, may have had discretionary authority regarding the Plan's funding and management of Plan assets. Pl.'s Reply to Hall's Mot. for Summ. J., Exs. 8 & 23. This evidence is sufficient to create a fact issue as to whether Hall and Sibon were fiduciaries. Accordingly, Hall is not entitled to judgment on the basis that neither he nor Sibon were ERISA fiduciaries.

### 5. Is Hall Liable For Oral Amendments To The Plan?

Hall next argues that he is entitled to judgment on any potential claims predicated upon oral amendments, or oral misrepresentations regarding amendments, to the Plan. Timmons, however, has not asserted any such claims against Hall. Accordingly, the court need not address this issue.

### 6. Is Hall Liable Under COBRA?

Hall next contends that he is entitled to judgment as a matter of law on any claims predicated upon COBRA because Sibon was not subject to COBRA's participation requirements. Again, Timmons has not asserted a claim against Hall based upon the provisions of COBRA. Accordingly, the court need not address this issue.

### 7. Does The Plan's Automatic Lien Provision Bar Timmons From Recovery?

█ Finally, Hall argues that the Plan's automatic lien provision may bar Timmons from recovery in the present suit. Specifically, Hall argues that, because the Plan stated that a beneficiary "must reimburse the plan [from any money judgment or set-

---

**13.** As previously discussed, Timmons has asserted breach of fiduciary duty claims against Hall in his individual capacity and in his capacity as Sibon's alter ego. Pl.'s Reply to Hall's Mot. for Summ. J. at 12–17.

tlement] in an amount up to the benefits paid under this Plan [and that the Plan would] have an automatic lien on any recovery," Timmons is not entitled to any monetary judgment in addition to the judgment entered against Sibon in the state court proceeding. Hall's Mot. for Summ. J., Ex. B, at 53.

Hall's argument is without merit. Whether the Plan is entitled to reimbursement from Timmons for his state court recovery is of absolutely no consequence, to the determination of whether Timmons is entitled to damages in the present suit. Timmons' surviving claims in the present suit are for ERISA violations, and stem from the denial of Timmons' claims for benefits resulting from his alleged November 7, 1995, injuries. The previous suit was in state court, and based upon Sibon's negligence in causing an on the job accident on May 25, 1995. Further, whether the Plan is entitled to reimbursement is an issue that must be taken up by the Plan on behalf of its sponsor, administrator, beneficiaries, or fiduciaries. Thus, the issue of whether the Plan has a right to reimbursement from Timmons' recovery in state court has no bearing on the issues being litigated in this suit. Accordingly, Hall is not entitled to judgment on this basis.[14]

### IV. CONCLUSION

Plaintiff's state law claims against Defendants AMS, UWLIC, and Hall are preempted by ERISA. Therefore, AMS' and UWLIC's Motion for Summary Judgment is GRANTED IN PART, insofar as it relates to federal preemption of Plaintiff's state law claims, and Plaintiff's state law claims against Hall are hereby DISMISSED, *sua sponte*, for failure to state a claim upon which relief can be granted.

14. In Paragraph XV of his motion, Hall states:
   In addition, from Sibon's Occupational Hazard policy of insurance, in lieu of worker's comp insurance, Timmons had already been paid $66,340.36, as of time of trial in Jasper, and probably was paid the further sum of $6,914.41, or total benefits of $73,254.77 in the months immediately thereafter up to the twenty-fourth month following injury. Additionally, Timmons has received some money in settlement in this case from such Occupational Hazard provider, namely American Fidelity Assurance Company, and its administrator, Special

Because genuine issues of material fact exist as to Plaintiff's ERISA claims against all the remaining defendants, Hall's Motion for Summary Judgment is DENIED, and AMS' and UWLIC's Motion for Summary Judgment is DENIED IN PART, insofar as it relates to Plaintiff's claims under ERISA.

Insurance Services, Inc. Timmons made claims upon American Fidelity and SISI for both his neck and back injuries.
*Id.* at 9. It is not at all clear from either the contents of this paragraph or the entirety of Hall's motion whether Hall has included Paragraph XV simply to provide the court with background information or to assert some legal basis in support of his motion for summary judgment. Accordingly, the court will not address the issues, if any, which may be presented in this paragraph of Hall's motion.